**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **MIKEL J. DAVIS,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv00054 |
| | ) | **MEMORANDUM OPINION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,**[1] | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand this case to the Commissioner for further development consistent with this Memorandum Opinion.

*I. Background and Standard of Review*

Plaintiff, Mikel J. Davis, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this case pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Davis protectively filed his application for DIB on June 4, 2004, alleging disability as of September 1, 2003, based on a right knee injury, a bulging disc, hypertension and depression. (Record, ("R."), at 51-54, 63, 110.) The claim was denied initially and upon reconsideration. (R. at 37-39, 42, 43-45.) Davis then requested a hearing before an administrative law judge, ("ALJ"). (R. at 47.) The ALJ held a hearing on April 11, 2006, at which Davis was represented by counsel. (R. at 21-34.)

By decision dated May 10, 2006, the ALJ denied Davis's claim. (R. at 13-18.) The ALJ found that Davis met the disability insured status requirements of the Act for DIB purposes through the date of the decision. (R. at 17.) The ALJ found that Davis had not engaged in substantial gainful activity since September 1, 2003. (R. at 17.) The ALJ also found that the medical evidence established that Davis suffered from a severe impairment to the right knee, but he found that Davis did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) The ALJ found that Davis's

allegations regarding his pain and symptoms were not totally credible. (R. at 17.) The ALJ found that Davis had the residual functional capacity to perform the full range of medium[2] work. (R. at 17.) The ALJ found that Davis could not perform his past relevant work. (R. at 17.) Based on Davis's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Davis could perform, including those of a cleaner, a stocker, a bagger, a construction worker, a nonconstruction laborer, a food prep worker, a cashier, a materials handler, an assembler and a hand packer. (R. at 17-18.) Thus, the ALJ concluded that Davis was not disabled under the Act and was not eligible for DIB benefits. (R. at 18.) *See* 20 C.F.R. § 404.1520(g) (2006).

After the ALJ issued his decision, Davis pursued his administrative appeals, (R. at 372-76), but the Appeals Council denied his request for review. (R. at 6-9.) Davis then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006). The case is before this court on Davis's motion for summary judgment filed February 19, 2007, and the Commissioner's motion for summary judgment filed March 26, 2007.

## *II. Facts*

Davis was born in 1954, (R. at 24), which classifies him as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). Davis has a high school education and past relevant work experience as an electrician and mechanic in the coal

---

[2] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2006).

mining industry. (R. at 24, 64, 69.) Davis testified that he was unable to work because of back and knee pain. (R. at 24-26.) Davis stated that he could stand for up to one hour without interruption. (R. at 30.) He stated that he could sit for up to one hour without interruption. (R. at 30.)

Cathy Sanders, a vocational expert, also was present and testified at Davis's hearing. (R. at 30-33.) Sanders testified that Davis's work as an electrician was heavy[3] and skilled and as a mechanic was very heavy[4] and skilled. (R. at 30-31.) Sanders was asked to consider a hypothetical individual of Davis's age, education and work history, who had the residual functional capacity to perform light[5] and medium work and who was limited as indicated in the assessment completed by psychologist Spangler. (R. at 31, 304-06.) Sanders testified that such an individual could perform medium and light jobs, such as a cleaner, a stocker, a bagger, a construction worker, a nonconstruction laborer, a miscellaneous food preparer, a cashier and a material handler. (R. at 31-32.) Sanders testified that there would be no jobs available that an individual with the limitations set forth in psychologist Lanthorn's assessment could perform. (R. at 32.) Sanders testified that there would be no jobs available that an individual who was limited as set forth in Dr. Ford's assessments could perform. (R.

---

[3]Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If an individual can perform heavy work, he also can perform medium, light and sedentary work. *See* 20 C.F.R. § 404.1567(d) (2006).

[4]Very heavy work involves lifting items weighing more than 100 pounds at a time with frequent lifting and carrying of items weighing 50 pounds or more. If an individual can perform very heavy work, he also can perform heavy, medium, light and sedentary work. *See* 20 C.F.R. § 404.1567(e) (2006.)

[5]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2006).

at 33.)

In rendering his decision, the ALJ reviewed records from Keokee High School; Wellmont Rehabilitation Services; Wellmont Lonesome Pine Hospital; Dr. Jim C. Brasfield, M.D.; Dr. Michael B. Ford, M.D.; Norton Community Hospital; Dr. D. Kevin Blackwell, D.O.; Dr. T. Lisle Whitman, M.D.; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Frank M. Johnson, M.D., a state agency physician; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Kathy J. Miller, M.Ed. a licensed psychological examiner; Robert S. Spangler, Ed.D., a licensed psychologist; The DCH Center for Occupational Health; and Rite Aid Pharmacy.

On August 30, 2002, Dr. Jim C. Brasfield, M.D., ordered an MRI of Davis's lumbar spine, which showed a moderate broad-based anterior extradural defect at the L5-S1 level and minimal disc bulging at several other levels with no focal disc herniation. (R. at 179.) On September 19, 2002, Davis complained of right leg and back pain. (R. at 176-77.) Davis reported that he had returned to performing underground electrician work. (R. at 176.) Dr. Brasfield reported that x-rays of Davis's lumbar spine showed an L5 disc abnormality with disc herniation to the right. (R. at 176.) He reported that Davis had been treated conservatively and that he had been doing fine. (R. at 176.) Dr. Brasfield reported that Davis was allowed to continue with his current activities. (R. at 176.)

On June 26, 2003, Dr. D. Kevin Blackwell, D.O., saw Davis for his complaints of right knee pain. (R. at 217.) Examination of Davis's right knee revealed tenderness along the medial collateral ligament, but no swelling, effusion or obvious deformities.

(R. at 217.) Dr. Blackwell diagnosed right medial collateral ligament strain. (R. at 217.) In July 2003, Dr. Blackwell reported that Davis had full range of motion of the patella. (R. at 215.) He diagnosed improved right medial collateral ligament sprain. (R. at 215.) Dr. Blackwell reported that Davis was capable of returning to regular work activities. (R. at 215.) In August 2003, an MRI of Davis's right knee showed a truncation of the posterior horn at the junction with the body in the medial meniscus. (R. at 218.)

On September 10, 2003, Dr. T. Lisle Whitman, M.D., evaluated Davis for his complaints of right knee pain. (R. at 227-28.) Dr. Whitman diagnosed symptomatic medial meniscal tear. (R. at 228.) Dr. Whitman recommended arthroscopic surgery. (R. at 227.) On October 10, 2003, Davis saw Dr. Whitman for follow-up to right knee arthroscopy. (R. at 226-27.) Davis had good range of motion of the right knee. (R. at 226.) Dr. Whitman reported that Davis's knee was stable. (R. at 226.) Dr. Whitman reported that Davis would be limited to a sitting job with limited driving. (R. at 226.) On October 31, 2003, Dr. Whitman reported that Davis had good range of motion and strength and no instability. (R. at 226.) Dr. Whitman reported that Davis could return to a standing job. (R. at 225.) Dr. Whitman reported that it was okay for Davis to go into the woods and hunt ginseng. (R. at 225.) On May 3, 2004, a functional capacity evaluation indicated that Davis demonstrated good strength and ability to do medium to heavy work. (R. at 221, 245-69.) Dr. Whitman reported that Davis was limited in his ability to crawl, squat and kneel, which should be no more than 15 to 20 feet five to six times in an eight-hour day. (R. at 221.) On August 15, 2005, examination of Davis's right knee showed good range of motion and no instability. (R. at 297.) Dr. Whitman reported that Davis demonstrated good strength in his right leg, which

indicated that he was staying fairly active. (R. at 297.)

On October 2, 2003, Dr. Michael B. Ford, M.D., reported that medication was controlling Davis's blood pressure. (R. at 192.) On February 2, 2004, Davis reported that his knee hurt all of the time. (R. at 190.) He had no other complaints. (R. at 190.) On February 24, 2004, Davis reported that his hypertension was better on medication. (R. at 188.)

On March 23, 2005, Dr. Ford completed a medical assessment indicating that Davis could occasionally lift and carry items weighing less than 10 pounds. (R. at 209-12.) He indicated that Davis could stand and/or walk less than two hours in an eight-hour workday. (R. at 209.) Dr. Ford reported that Davis must periodically alternate sitting and standing to relieve pain and that his ability to push and/or pull was limited in his upper and lower extremities. (R. at 210.) Dr. Ford reported that Davis could occasionally balance and stoop and never climb, kneel, crouch or crawl. (R. at 210.) He reported that Davis could not reach overhead and that he was limited to only occasional reaching. (R. at 211.) He indicated that Davis was limited in his ability to work around temperature extremes, noise, dust, vibration, humidity/wetness, hazards, fumes, odors, chemicals and gases. (R. at 212.) On June 8, 2005, Davis complained of hypertension and low back pain. (R. at 181.) Davis's blood pressure reading was 122/70. (R. at 181.) Dr. Ford reported that Davis had mild depression. (R. at 181.) On October 4, 2005, Davis reported that he did not believe that he could do without Lortab. (R. at 331.)

On February 1, 2006, Dr. Ford completed a medical assessment indicating that

Davis could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing less than 10 pounds. (R. at 327-29.) He indicated that Davis could stand and/or walk at least two hours in an eight-hour workday. (R. at 327.) Dr. Ford indicated that Davis had to alternate between sitting and standing to relieve pain. (R. at 328.) He indicated that Davis was limited in his ability to push and/or pull with his upper and lower extremities. (R. at 328.) Dr. Ford indicated that Davis could occasionally climb, crouch and stoop but never balance, kneel or crawl. (R. at 328.) He indicated that Davis's ability to reach and finger was limited. (R. at 328.) Dr. Ford also indicated that Davis was limited from working around temperature extremes, dust, vibration, humidity/wetness, hazards, fumes, odors, chemicals and gases. (R. at 329.)

On July 24, 2003, Davis was seen at Norton Community Hospital for complaints of right knee pain and swelling. (R. at 214.) Davis was diagnosed with right medial collateral ligament strain. (R. at 214.) It was reported that Davis could return to work, but that he could not perform underground work. (R. at 214.) It was also reported that Davis could not squat or kneel. (R. at 214.) On August 21, 2003, it was reported that an MRI of Davis's right knee showed medial collateral ligament strain and cartilage loss or damage. (R. at 213.) The previous work limitations were continued. (R. at 213.)

On December 9, 2004, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Davis had the residual functional capacity to perform medium work. (R. at 270-77.) He indicated that Davis's ability to push and/or pull was limited in the lower extremities. (R. at 271.) Dr. Surrusco indicated that Davis

-8-

could occasionally climb and crawl, frequently balance and stoop and never kneel or crouch. (R. at 273.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 273-75.)

On March 2, 2005, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Davis had the residual functional capacity to perform medium work. (R. at 278-84.) He indicated that Davis was limited in his ability to push and/or pull with the lower extremities. (R. at 279.) Dr. Johnson indicated that Davis could occasionally climb, stoop and crawl, frequently balance and never kneel or crouch. (R. at 280.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 280-82.)

On April 6, 2005, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Davis at the request of Davis's attorney. (R. at 285-93.) The Wechsler Adult Intelligence Scale-Revised, ("WAIS-R"), test was administered and Davis obtained a verbal IQ score of 90, a performance IQ score of 74 and a full-scale IQ score of 80. (R. at 286.) Lanthorn diagnosed major depressive disorder, single episode, severe, anxiety disorder with generalized anxiety, pain disorder associated with both psychological factors and a general chronic medical condition and borderline intellectual functioning. (R. at 292-93.) Lanthorn indicated that Davis had a then-current Global Assessment of Functioning, ("GAF"), score of 45.[6] (R. at 293.)

---

[6]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

Lanthorn completed a mental assessment indicating that Davis had a more than satisfactory ability to understand, remember and carry out simple job instructions. (R. at 294-96.) He indicated that Davis had a limited but satisfactory ability to understand, remember and carry out detailed instructions and to maintain personal appearance. (R. at 294-95.) Lanthorn indicated that Davis had a seriously limited, but not precluded, ability to follow work rules, to function independently, to understand, remember and carry out complex instructions and to behave in an emotionally stable manner. (R. at 294-95.) He indicated that Davis had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to maintain attention/concentration, to relate predictably in social situations and to demonstrate reliability. (R. at 294-95.)

On December 1, 2005, Kathy J. Miller, M.Ed., a licensed psychological examiner, and Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Davis at the request of Disability Determination Services. (R. at 299-303.) Miller and Spangler reported that Davis's mood and affect were within normal limits. (R. at 301.) Davis was smiling, cooperative and friendly throughout the evaluation. (R. at 301.) No symptoms of depression or anxiety were noted. (R. at 301.) Miller and Spangler diagnosed history of major depression that appeared to be in remission and average intellectual functioning. (R. at 302.) A then-current GAF score of 75[7] was assessed. (R. at 302.) Miller and Spangler completed a mental assessment indicating that Davis's ability to understand, remember and carry out instructions and his ability to respond appropriately to supervision, co-workers and work pressures were not limited.

---

[7]A GAF of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors ...; no more than slight impairment in social, occupational, or school functioning...." DSM-IV at 32.

-10-

(R. at 304-06.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 10, 2006, the ALJ denied Davis's claim. (R. at 13-18.) The ALJ found that the medical evidence established that Davis suffered from a

-11-

severe impairment to the right knee, but he found that Davis did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) The ALJ found that Davis had the residual functional capacity to perform the full range of medium work. (R. at 17.) The ALJ found that Davis could not perform his past relevant work. (R. at 17.) Based on Davis's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Davis could perform, including those of a cleaner, a stocker, a bagger, a construction worker, a nonconstruction laborer, a food prep worker, a cashier, a materials handler, an assembler and a hand packer. (R. at 17-18.) Thus, the ALJ concluded that Davis was not disabled under the Act and was not eligible for DIB benefits. (R. at 18.) *See* 20 C.F.R. § 404.1520(g) (2006).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore,

-12-

while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Davis argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-8.) Davis also argues that the ALJ erred by finding that he had the residual functional capacity to perform the full range of medium work. (Plaintiff's Brief at 9-12.)

Davis argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. (Plaintiff's Brief at 6-8.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a) (2006). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b) (2006). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to

work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

Based on my review of the record, I find that the ALJ's finding that Davis did not suffer from a severe mental impairment is supported by substantial evidence. While Lanthorn diagnosed Davis with major depressive disorder, anxiety disorder with generalized anxiety and pain disorder, the ALJ rejected this assessment because it was inconsistent with the record. (R. at 15-16.) The ALJ gave greater weight to the assessment of Spangler and Miller because it was consistent with the evidence of record and with Davis's actual functioning. (R. at 15-16.) I find this a proper weighing of the evidence. In June 2005, Dr. Ford reported that Davis had mild depression. (R. at 181.) Davis testified at his hearing that his emotional problems did not prevent him from engaging in activities that he enjoyed. (R. at 27.) Davis admitted that he could care for his personal needs, that he did not need help or reminders taking medication, that he had no problems getting along with family, friends or neighbors, that he was able to follow written and spoken instructions and that he could handle stress and changes in routine. (R. at 91-96.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Davis did not suffer from a severe mental impairment.

Davis also argues that the ALJ erred by finding that he had the residual functional capacity to perform the full range of medium work. (Plaintiff's Brief at 9-12.) Based on my review of the record, I do not find that substantial evidence exists to support the ALJ's finding on this issue. The ALJ noted that he was rejecting the

-14-
Case 2:06-cv-00054-PMS   Document 14   Filed 05/30/07   Page 14 of 17   Pageid#: 100

assessments of Dr. Ford because they were not supported by documentary evidence and because they were inconsistent with other more reliable evidence, specifically Davis's actual activities, the functional capacity evaluation and the opinion of Dr. Whitman, an orthopedic surgeon. (R. at 16-17.) The ALJ noted that Dr. Whitman's restrictions on crawling, squatting and kneeling were not indicated in the functional capacity evaluation. (R. at 17.) While these restrictions were not indicated in the functional capacity evaluation, Dr. Whitman did place these restrictions on Davis's work-related abilities even after reviewing the functional capacity evaluation. (R. at 220, 245-69.) Dr. Whitman found that Davis could perform medium to heavy work, but also found that Davis was limited in his ability to crawl, squat and kneel. (R. at 221.)

The medical evidence shows that Dr. Whitman is not the only physician who placed restrictions on Davis's ability to crawl, squat and kneel. Dr. Ford found that Davis should periodically alternate sitting and standing and that his ability to push and/or pull was limited in his lower extremities. (R. at 210, 328.) He found that Davis could occasionally balance and stoop and never climb, kneel, crouch or crawl. (R. at 210.) When Davis was seen at Norton Community Hospital in July 2003, it was indicated that he could not squat or kneel, and these restrictions continued when he was seen again in August 2003. (R. at 213-14.) Two state agency physicians also found that Davis's ability to push and/or pull with his lower extremities was limited. (R. at 271, 279.) Dr. Surrusco found that Davis could occasionally climb and crawl, frequently balance and stoop and never kneel or crouch. (R. at 273.) Dr. Johnson found that Davis could occasionally climb, stoop and crawl, frequently balance and never kneel or crouch. (R. at 280.)

The ALJ failed to pose these limitations to the vocational expert when trying to determine what jobs were available that Davis could perform. While the ALJ noted that Dr. Whitman placed restrictions on Davis's ability to crawl, squat and kneel, he failed to note that other physicians, including two state agency physicians, placed these limitations and additional limitations on Davis's work-related abilities. While an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King*, 615 F.2d at 1020, an ALJ may, under the regulations, assign no or little weight to a medical opinion based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings. Based on this, I do not find that substantial evidence exists to support the ALJ's finding that Davis had the residual functional capacity to perform a full range of medium work.

## IV. Conclusion

For the foregoing reasons, Davis's motion for summary judgment and the Commissioner's motion for summary judgment will be denied, and the Commissioner's decision denying benefits will be vacated and the case will be remanded to the Commissioner for further consideration of Davis's physical residual functional capacity and his ability to perform work-related activities.

An appropriate order will be entered.

DATED: This 30th day of May 2007.

-16-

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE